IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRISTAN JUSTICE,                          Case No. 3:12-cv-01507-AA
                                               OPINION AND ORDER
        Plaintiff,

    v.

ROCKWELL COLLINS, INC.,
a Delaware corporation;
and NARESH AGARWAL, an
individual,

        Defendants.

_____

Tristan Justice
1435 N.E. 81st Avenue, Suite 100
Portland, Oregon 97213
        Pro se plaintiff

Edwin A. Harnden
Sean P. Ray
Barran Liebman LLP
601 S.W. 2nd Avenue, Suite 2300
Portland, Oregon 97204
        Attorneys for defendant Rockwell Collins, Inc.

Paul C. Buchanan
Margaret S. Fonberg
Buchanan Angeli Altshul & Sullivan LLP
321 S.W. 4th Avenue, Suite 600
Portland, Oregon 97204
        Attorneys for defendant Naresh Agarwal

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant Rockwell Collins, Inc. ("Rockwell") moves for summary judgment on all of plaintiff Tristan Justice's claims pursuant to Fed. R. Civ. P. 56. Defendant Naresh Agarwal ("Agarwal") filed a separate, partial motion for summary judgement. In addition, plaintiff moves to impose sanctions. For the reasons set forth below, defendants' motions are granted and plaintiff's motion is denied, and this case is dismissed.

BACKGROUND[1]

In February 2010, Agarwal, a 67-year-old Systems Engineer at Rockwell, was transferred from San Jose, California, to the company's Wilsonville, Oregon, facility. Agarwal's wife remained in California; Agarwal rented a small apartment in a building near Rockwell's Oregon branch and traveled to San Jose to stay with his family every other weekend.

In June 2010, plaintiff met Agarwal at the gym attached to Agarwal's apartment building. Although he was 38-years-old at the time and not enrolled in college, plaintiff represented himself to be a 25-year-old senior, majoring in analog circuitry at Portland State University ("PSU"), who was looking for employment and had fallen on hard times. After another chance meeting at the gym in July 2010, plaintiff sent Agarwal his resume, which represented

---

[1] The factual background underlying this case is largely undisputed; however, there are instances in which defendants disagree about whether a certain event even took place. Because the Court is required to view the evidence in the light most favorable to plaintiff and draw all inferences in his favor, these disputed occurrences are recounted as part of this case's background but referred to as "alleged" or "purported."

that he was a student at PSU with a 3.70 grade point average and an imminent Bachelor of Science degree; Agarwal then forwarded plaintiff's resume to Salim Aswat, Rockwell's Functional Manager.

On August 9, 2010, Aswat interviewed plaintiff. That same day, plaintiff ran into Argawal at the gym. After learning of his successful interview, Agarwal invited plaintiff over to his apartment to celebrate. They drank wine and ate dinner while plaintiff told Agarwal more about his financial difficulties and family struggles; plaintiff ultimately stayed the night at Agarwal's apartment, despite the fact that Agarwal allegedly made a sexual pass at plaintiff earlier that evening. Plaintiff also spent the following night at Agarwal's apartment, even though Agarwal purportedly made another sexual overture. At some point thereafter, but before he began working at Rockwell, plaintiff moved in with Agarwal.

On August 11, 2010, plaintiff filled out an application for APR Consulting, Inc., ("APR") a staffing agency contracted by Rockwell to provide short-term hires. On August 15, 2010, plaintiff entered into an employment agreement with APR, pursuant to which plaintiff was to work at Rockwell as a service coordinator.

Plaintiff's first day of work at Rockwell was August 23, 2010. He was assigned an alternating schedule, wherein he worked 36 hours one week and 44 hours the next. Plaintiff was informed by Aswat early in his tenure at Rockwell that he could not work more than the allotted hours absent prior approval.

Plaintiff allegedly experienced inappropriate sexual contact

and comments from Agarwal, both at home and at work, between August and September 2010. Nevertheless, plaintiff frequently socialized with Agarwal outside of work during this period, going on hikes, out to dinner, and shopping; plaintiff also cooked several Indian meals for Agarwal in their apartment.

In October 2010, plaintiff allegedly reported to Aswat that Agarwal and another Rockwell employee, Igor Kalish, had engaged in separate instances of offensive behavior while at work; however, he did not describe any physical conduct of a sexual nature. Aswat purportedly told plaintiff he would take care of it and the behavior ceased - in Agarwal's case, both in and outside of work.

In November 2010, Aswat reiterated to plaintiff that he was not authorized to work additional hours or overtime.

In December 2010, plaintiff gave Agarwal a bottle of wine and cookies for Christmas. Around that time, Agarwal began asking plaintiff to move out of the apartment, as he had grown suspicious that plaintiff was not a PSU student; according to Agarwal, plaintiff was also behaving increasingly rudely and erratically.

In February 2011, plaintiff made a general complaint about the air quality at Rockwell. He neither missed any time from work nor raised the subject again.

In late February or early March 2011, plaintiff had a conversation with Aswat about becoming a permanent Rockwell employee after he allegedly resolved a power supply issue successfully. Aswat, who, like plaintiff and Agarwal, was born in India, purportedly told plaintiff that he would not succeed at

Rockwell because it was a white organization. Shortly thereafter, plaintiff developed the belief that someone was sabotaging his work, which he reported to Ron Greenley and Patrick Wan, project managers at Rockwell. He later shared his concerns with Aswat and another Rockwell employee, Joanne Hodges, and requested that his work be kept in a locked area.

In March 2011, plaintiff allegedly reported additional inappropriate behavior to Aswat, this time perpetuated by three different Rockwell employees: Greenley, David Davis, and Tu To. The conversation lasted only a few seconds and plaintiff did not provide any details. The complained-of conduct subsequently stopped.

At some unspecified time in early April 2011, plaintiff told Terry Zimmerman, the Director of Human Resources, that he worked overtime and was not compensated properly during an alleged discussion about sabotaged parts. On April 14, 2011, Aswat again cautioned plaintiff against working additional or unscheduled hours without prior approval. That same day, plaintiff sent an email to Zimmerman and Debbie Schramm, Rockwell's Principal Programs Manager, about the alleged sabotage, asserting that Greenley and Wan were complicit. Shortly thereafter, the components on one of the boards plaintiff was working on burned up due to faulty wiring. Rockwell had to bring in an out-of-state expert to diagnose the problem. Ultimately, plaintiff's allegations of sabotage could not corroborated via an investigation.

On May 20, 2011, Aswat terminated plaintiff's contractual

duties. Plaintiff remained in Agarwal's apartment until early June 2011, despite the fact that Agarwal had vacated the premises, as his lease had expired at the end of the previous month.

On June 22, 2011, plaintiff filed a complaint with Oregon's Bureau of Labor and Industries ("BOLI"), alleging unlawful employment practices by Rockwell. Plaintiff was represented by an attorney - Charese Rohny - during the course of the BOLI investigation, including the filing of the BOLI complaint. On May 21, 2012, after finding insufficient evidence, BOLI provided plaintiff a right-to-sue letter. The U.S. Equal Employment Opportunity Commission ("EEOC") adopted BOLI's findings.

On August 20, 2012, plaintiff commenced this lawsuit; his initial pleadings were largely duplicative of his BOLI complaint. He filed a first amended complaint ("FAC") on December 31, 2012, asserting the following claims against Rockwell: (1) unpaid overtime in violation of the Fair Labor Standards Act ("FLSA") and Or. Rev. Stat. § 653.261; (2) retaliation for reporting unpaid overtime in violation of the FLSA and Or. Rev. Stat. § 653.060; (3) sexual harassment in violation of the Civil Rights Act ("Title VII") and Or. Rev. Stat. § 659A.030; (4) retaliation for reporting sexual harassment in violation of Title VII and Or. Rev. Stat. § 659A.030; (5) racial/national origin discrimination in violation of Title VII and Or. Rev. Stat. § 659A.030; (6) contractual discrimination in violation of 42 U.S.C. § 1981; (7) retaliation for reporting air quality issues in violation of Or. Rev. Stat. §

659A.199 and Or. Rev. Stat. § 654.062[2]; (8) intentional infliction of emotional distress ("IIED"); and (9) defamation. Plaintiff also alleges Oregon common law claims against Agarwal for IIED, battery, and assault.

Thereafter, plaintiff filed several discovery motions and one ex parte motion, as well as two motions to appoint counsel. The Court denied each of plaintiff's discovery motions and advised him that he should not lodge motions ex parte. Concerning plaintiff's requests for pro bono counsel, the Court initially appointed an attorney in May 2013; however, the appointment was terminated within a week. The Court denied plaintiff's subsequent motion to appoint counsel. In September 2013, shortly before his responsive documents were due and deposition was to be taken, plaintiff a faxed request for a continuance due to mental health issues, which the Court granted. In December 2013, the Court lifted the stay and ordered both parties to produce certain documents; the Court also ordered plaintiff to produce himself for a deposition in February 2014 and to answer all questions posed to him by defendants. The Court then denied two additional motions to compel filed by plaintiff.

In March 2014, defendants moved for summary judgment. In April

---

[2] In addition to alleged air quality issues, plaintiff's whistleblower retaliation claim is premised on his reports of unpaid overtime and sexual harassment, which are covered by Or. Rev. Stat. § 653.060 and Or. Rev. Stat. § 659A.030, respectively. FAC ¶ 143. The burden of proof and elements under those statutes are identical to Or. Rev. Stat. § 659A.199, such that those aspects of his whistleblower retaliation claim are duplicative. Larmanger v. Kaiser Found. Health Plan of the N.W., 2012 WL 3921777, *20 (D.Or. Sept. 7, 2012).

2014, plaintiff moved for a guardian ad litem; the Court instead ordered the appointment of Darien Loiselle as pro bono counsel. Loiselle conducted the depositions of Aswat, Agarwal, Zimmerman, and Dan Ellis, another project manager at Rockwell, and participated in an unsuccessful judicial settlement with the Honorable John Acosta. In March 2015, the Court granted Loiselle's motion to withdraw and allocated plaintiff an additional 30 days to respond to defendants' summary judgment motions. In May 2015, plaintiff moved to impose sanctions arising out of defendants' alleged spoilation of evidence.

On June 12, 2015, the Court entered a scheduling order, setting oral argument for July 6, 2015, on the sole issue of whether an employment relationship existed between plaintiff and Rockwell. At the hearing, plaintiff requested to stay the proceedings - to allow time for the Court to appoint a guardian ad litem or for him to seek counsel - and presented a letter, dated July 1, 2015, from his mental health counselor, attesting to his ongoing symptoms of anxiety and depression. Defendants opposed a stay, as they had been no conferral or even any previous notification that such a request would be submitted at oral argument. They also reiterated plaintiff had been aware of both this issue and the date set for oral argument for some time, had engaged in a pattern of delay, and that the case had been ongoing for several years, such that the interests of justice favored a prompt ruling on the merits. Because it was clear in the course of oral argument that plaintiff was both prepared and knowledgeable

regarding on the narrow topic of an employment relationship, the Court found that no stay was necessary and denied plaintiff's oral request.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

The central issue to be decided in this case is whether any of plaintiff's federal and state rights have been violated by the treatment he received while either working at Rockwell or living with Agarwal.

I.   Preliminary Matters

The Court must resolve three issues prior to reaching the substantive merits of defendants' motions: the applicable standard for pro se proceedings, defendants' evidentiary objections, and plaintiff's allegations regarding the spoilation of evidence.

A.   Pro Se Standard

Plaintiff argues, in part, that it would be inappropriate to grant defendants' motions in light of his pro se status. Pl.'s Resp. to Mots. Summ. J. 12-13. Because pro se plaintiffs do not have the benefit of legal counsel, their initial pleadings are "held to less stringent standards" than those drafted by lawyers. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 923 n.4 (9th Cir. 2011), cert. denied, 132 S.Ct. 1000 (2012). Nevertheless, at summary judgment, "[t]he elements plaintiff must prove, and plaintiff's burden of proof, are not relaxed simply because [he] is appearing pro se." Rockwell's Reply to Mot. Summ. J. 3 (citing Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986)); see also Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules") (citation omitted). As such, plaintiff is not entitled to preferred treatment at this stage in the

Page 10 - OPINION AND ORDER

proceedings in light of his pro se status.

    B.   <u>Evidentiary Objections</u>

    Defendants each object to plaintiff's recitation of facts in his opposition brief, as well as to the declaration filed therewith. Specifically, Rockwell contends that, "by cutting and pasting from the allegations in his [FAC, plaintiff impermissibly] attempts to pass off speculative assumptions as facts." Rockwell's Reply to Mot. Summ. J. 2. Agarwal similarly asserts that "[p]laintiff's Opposition uses vague and extreme sounding characterizations to further distort and exaggerate the account that he gave in his deposition [such that] the Court should set aside these portions of plaintiff's Declaration" pursuant to the sham affidavit rule. Agarwal's Reply to Partial Mot. Summ. J. 9. Although expressly permitted to do so by local rule, plaintiff did not respond to defendants' evidentiary objections. <u>See</u> LR 56-1(b) ("[i]f an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving party may file a surreply memorandum [within] seven days").

    Defendants' objections are granted for two reasons. First, affidavits that are "merely conclusory reiterations of the allegations in the complaint" are insufficient to defeat summary judgment. <u>Roslindale Co-op. Bank v. Greenwald</u>, 638 F.2d 258, 261 (1st Cir.), <u>cert. denied</u>, 454 U.S. 831 (1981); <u>see also</u> <u>Yunis v. United States</u>, 118 F.Supp.2d 1024, 1030 (C.D.Cal. 2000) ("[d]eclarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment")

Page 11 - OPINION AND ORDER

(citing <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989)). For example, plaintiff contends that, "[o]n information and belief, Aswat often consulted Agarwal when making employment decisions"; however, there is no indication that plaintiff possessed any personal knowledge of such facts. Pl.'s Resp. to Mots. Summ. J. 5; First Justice Decl. ¶ 17. Even though this case has been ongoing for nearly three years, and plaintiff was represented by counsel for much of that time, he failed to generate any evidence, outside of his declaration (which is merely a more concise recitation of the complaint) to support his allegations of wrongdoing. To the extent relevant, the other evidence attached to his opposition – i.e. a litigation letter sent by Rockwell's counsel to plaintiff regarding Rockwell's document retention policy, internal emails from plaintiff's time at Rockwell, plaintiff's 2012 counseling records, and the depositions of Agarwal, Aswat, Ellis, and Zimmerman – largely supports defendants' motions.

Second, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991). The sham affidavit doctrine therefore prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting a declaration contradicting his or her own prior testimony, which would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." <u>Id.</u> (citations and internal quotations omitted). In order to trigger this rule, the court must make a factual determination that the

contradiction is a sham and "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998-99 (9th Cir. 2009) (citation omitted).

The sham affidavit rule should nonetheless be applied with caution because it "is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." <u>Id.</u> at 998. As such, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (citation omitted). In other words, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." <u>Messick v. Horizon Indus.</u>, 62 F.3d 1227, 1231 (9th Cir. 1995) (citation and internal quotations omitted).

The Court finds that plaintiff's declaration does not offer elucidation or explanation of his prior deposition testimony. For instance, plaintiff asserts in his April 2015 declaration that Agarwal got into bed with him "multiple times" and "attempted to rape" him, such that he had to "fend off [Agarwal's] advances on numerous occasions." First Justice Decl. ¶¶ 20-21. While the Court

does not take allegations of rape lightly, plaintiff's February 2014 description of these events[3] painted a far different picture: he testified that there were only two instances, in August or September 2010, during which Argawal laid down on the mattress where he was sleeping and rubbed up against him; both parties were fully clothed and separated by blankets. First Buchanan Decl. Ex. 1, at 82-83, 105. These occurrences lasted "a short period" - less than a "couple minutes" - and were terminated when Agarwal got up and walked into his own room after plaintiff pushed him off the bed without saying anything. Id. at 84-85, 105-06.

In addition, plaintiff asserts in his declaration that Agarwal engaged in inappropriate sexual behavior on "numerous occasions." First Justice Decl. ¶¶ 14-15, 18. Similarly, plaintiff contends in his brief that "Agarwal often made many . . . sexual epithets: 'I am a dirty old man,' 'I want sex,' 'I am going [to] come into bed tonight,' 'you have a nice butt,' 'you have to lick ass to get ahead at work,' 'if you take care of me I'll take care of you.'" Pl.'s Resp. to Mots. Summ. J. 23. Yet, during his deposition,

---

[3] Plaintiff asserted that his February 2014 deposition testimony was not admissible because he was "on medications" and "interrogated" by defendants. Hearing (July 7, 2015). He also remarked that he "did not receive adequate counsel" from his previous attorney or attorneys. Id. While difficult to decipher his precise intent, the Court understands the latter as a reiteration of plaintiff's previous point that he should be held to a lesser standard in light of his pro se status. Regardless, given that plaintiff's deposition took place over a year ago and his last appointed pro bono counsel withdrew in March 2015 (before he filed his combined response to defendants' summary judgment motions), in conjunction with the fact that he produced no supporting evidence, the Court finds plaintiff's arguments to be both untimely and without merit.

Page 14 - OPINION AND ORDER

plaintiff stated that Agarwal made only "two or three" sexual comments total - i.e. one to three times he said "you look sexy" and once he remarked "you have a nice butt" - which, like the alleged few physical overtures, occurred in the first two months of the approximately nine-month period they lived and worked together. First Harnden Decl. Ex. A, at 17; 58-59; First Buchanan Decl. Ex. 1, at 27-29, 71, 81-82, 101; Second Buchanan Decl. Ex. A, at 2-3; see also First Buchanan Decl. Ex. 1, at 100 (plaintiff explicitly testifying that the only "off-color language" Agarwal used was "looking sexy, nice butt").

The Court is unable to conclude that this is a case in which plaintiff's memory could conceivably have been refreshed by subsequent events, including discussions with others or his review of documents. This is especially true in light of the fact that Agarwal, the only other person present or with any knowledge of these alleged events (as plaintiff never reported them and they were not independently observed) "emphatically denies having any sexual interest in plaintiff or engaging in any sexual or attempted sexual conduct with him whatsoever." Agarwal's Mot. Summ. J. 6; Agarwal Decl. ¶ 26; First Harnden Decl. Ex. A, at 5, 10-11, 17-18, 40, 53-54; First Buchanan Decl. Ex. 1, at 21-24, 29-30, 96. Moreover, given the seriousness of the allegations in plaintiff's declaration, and his adamant deposition statements that he had disclosed all improper behavior, the Court cannot find that this was a situation in which plaintiff was elaborating upon or clarifying prior testimony. In fact, plaintiff's deposition

testimony, while often vague, provided far more detail than his declaration.

Accordingly, because no explanation was provided for the clear and unambiguous inconsistencies between his February 2014 and April 2015 sworn statements, the Court finds that portions of plaintiff's declaration are a sham.[4] Plaintiff's April 2015 declaration is stricken, as are the corresponding allegations in his response brief, to the extent they contradict his prior deposition testimony or are conclusory.

C.   Spoilation of Evidence

Plaintiff argues that "[t]he Court should dismiss Defendants' Motions for Summary Judgment [and] grant summary judgment" in his favor because "Rockwell has willfully destroyed evidence" and failed to comply with his discovery requests. Pl.'s Resp. to Mots. Summ. J. 13-15; Pl.'s Mem. in Supp. of Mot. Sanctions 8-9.

Initially, as plaintiff acknowledges, these precise issues have been previously litigated. Specifically, plaintiff filed two motions to compel "[t]his discovery on the defendants" and also "notified the court that Rockwell had spoilated evidence." Pl.'s Mem. in Supp. of Mot. Sanctions 8; see also Pl.'s Reply to Mot.

---

[4] The Court also notes that inconsistencies exist between plaintiff's declaration and the other evidence of record, including his BOLI complaint. Actually, the record is replete with contradictory evidence relating to plaintiff; for instance, the information he furnished to APR on his employment application materially differed from that which he provided to Rockwell via his resume. Compare First Harnden Decl. Ex. A, at 62-63, with First Buchanan Decl. Ex. 2, at 1-2. In so noting, the Court is mindful that it may not make "[c]redibility determinations or weigh the evidence" at this stage in the proceedings. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

Sanctions 2 (detailing the two prior instances, one while
proceeding pro se and the other with the assistance of counsel,
that he "notified [the Court] of the spoilation by Rockwell"). The
Court denied plaintiff's motions and the deadline for discovery has
long since lapsed. Minute Order (Jan. 27, 2014). As defendants
indicated in their discovery responses, the majority of plaintiff's
requests were overly broad or irrelevant. See, e.g., Pl.'s Mot.
Compel Attach. 2, at 6 (requesting from Agarwal "[a]ll emails, text
messages, or other electronic messages (whether on Rockwell or
personal email accounts, or via social networking sites including
but not limited to Twitter, LinkedIn, MySpace, Flikr, WordPress,
and Blogspot) sent by you or received by you from any person
currently or formerly employed by Rockwell"); Pl.'s Mot. Compel
Attach. 8, at 5-17 (requesting from Rockwell "[a]ll  emails,
instant messages, and other correspondence sent and received by
[the 30-plus listed individuals] from June 1, 2010 to present").
Plaintiff did not seek reconsideration and provides no argument or
evidence regarding why the Court should diverge from its previous
ruling. See, e.g., Ferrone v. Onorato, 2007 WL 2973684, *10
(W.D.Pa. Oct. 9, 2007), aff'd, 298 Fed.Appx. 190 (3rd Cir. 2008)
(denying the plaintiff's spoilation claims where they were untimely
raised after the close of discovery and during summary judgment
proceedings, and "ha[d] little to no evidentiary support").

Regardless, although the "Ninth Circuit has . . . not set
forth a precise standard for determining when [spoilation]
sanctions are appropriate," the majority of trial courts have

adopted the following test: (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) "the records were destroyed with a culpable state of mind"; and (3) "the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Apple Inc. v. Samsung Elecs. Co., Ltd., 888 F.Supp.2d 976, 989-90 (N.D.Cal. 2012) (citations and internal quotations and brackets omitted); see also Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (outlining a similar test for determining when to "impos[e] the harsh sanction of dismissal") (citation and internal quotations omitted). The party seeking spoliation sanctions bears the burden of establishing each element. Apple, 888 F.Supp.2d at 989-90.

Plaintiff's spoliation argument is attenuated, at best, as there is no indication that either defendant "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Leon, 464 F.3d at 958. Rather, at all relevant times, Rockwell had a document retention policy in place pursuant to which emails are routinely deleted after 90 days unless they are specifically marked pursuant to one of the automatic deletion exceptions, such as emails that have "Business Value" or are being retained pursuant to a "Litigation Hold."[5] Second Harnden Decl. Ex.

---

[5] Plaintiff contends "I earmarked all my emails (on Rockwell's system) for retention during my employment with Rockwell." Second Justice Decl. ¶ 7. Rockwell's records, however, do not reflect as much, as the vast majority of emails sent in the ordinary course of business do not qualify for any exception to the automatic deletion policy. Second Harnden Decl. Ex. A; see also Rockwell's Resp. to Mot. Sanctions 6-7 ("[p]laintiff now

A; see also Arthur Andersen LLP v. United States, 544 U.S. 696, 704 (2005) ("[d]ocument retention policies [are] common in business, and are lawful under ordinary circumstances") (citation and internal quotations and ellipses omitted). Thus, correspondences near the end of plaintiff's assignment at Rockwell, such as his allegations of sabotage from April 2011, were manually removed from the automatic deletion system under the retention policy and have been produced. Pl.'s Resp. to Mots. Summ. J. Ex. B. Likewise, emails from August 2010 through October 2010, generated before a problem with plaintiff's user identification was remedied, were not automatically deleted because they were part of an inactive account. Pl.'s Resp. to Mots. Summ. J. Exs. A, C.

More importantly, there in no indication that any of the deleted emails were relevant to plaintiff's claims. Although plaintiff argues strenuously that defendants engaged in evidence spoilation, he never addresses how the deleted emails are pertinent, beyond noting broadly that he "brought seventeen claims [and] [a]ll the evidence to . . . establish his claims is in the possession of the defendants." Pl.'s Mem. in Supp. of Mot. Sanctions 17; see also Pl.'s Reply to Mot. Sanctions 6 (asserting

_____

asserts, for the first time in the three-year history of this case, that he marked every email at Rockwell [as] 'business value' [but it] is absurd to think that a brand new contractor, for no known reason, would mark every email sent or received as 'business value' [and] doing so would be a blatant violation of the procedures, which intend only those emails which actually have business value to be marked as such"). Further, contrary to plaintiff's assertion, the record demonstrates that "a litigation hold had been in place since 2011." Third Harnden Decl. ¶ 9; Second Harnden Decl. Ex. E, at 2; Pl.'s Mem. in Supp. of Mot. Sanctions Ex. C.

that he "received several commendations for his performance via
emails from Rockwell's management" and "launched several complaints
via email with Rockwell," but failing to delineate either how this
alleged information is potentially relevant to his claims or the
approximate dates or content of said emails). As discussed above,
plaintiff's allegations of sabotage have been retained; he also
testified at his deposition that he never reported any alleged
harassment or discrimination via email. See, e.g., Second Harnden
Decl. Ex. B, at 6-7. The only other potentially relevant
correspondence that plaintiff endorsed sending related to alleged
air quality issues, which were disclosed in mid-February 2011, more
than 90 days prior to the termination of his contract.[6] First
Justice Decl. ¶¶ 33, 43-47.

In sum, as reflected in the Court's prior denial of his
discovery motions, plaintiff is not entitled to engage in a fishing
expedition borne from broad, conclusory allegations,
unsubstantiated by facts. See In re Compl. of Judicial Misconduct,
650 F.3d 1370, 1372 (9th Cir. 2011) (the plaintiff's failure to
"explain what specific misconduct" the sought-after discovery would
allegedly reveal constituted an improper "fishing expedition"); see
also Szabo Food Serv. Inc. v. Canteen Corp., 823 F.2d 1073, 1083
(7th Cir. 1989), cert. dismissed, 485 U.S. 901 (1988) (a litigant
may not file suit in order to "use discovery as the sole means of
finding out whether [he has] a case"). Plaintiff's motion is

---

[6] Because plaintiff's whistleblower retaliation claim is
barred by the statute of limitations, the absence of this email
is not prejudicial.

denied.[7]

## II.    Agarwal's Summary Judgment Motion

While Agarwal recognizes that plaintiff's "assault and battery
[claims] present factual disputes that are not amendable to summary
judgment," he argues that plaintiff's IIED claim and request for
punitive damages fail as a matter of law. Agarwal's Partial Mot.
Summ. J. 6.

### A.    Intentional Infliction of Emotional Distress

To prevail on an IIED claim, the plaintiff must show that: (1)
the defendants "intended to cause plaintiff severe emotional
distress or knew with substantial certainty that their conduct
would cause such distress"; (2) the defendants "engaged in
outrageous conduct, i.e., conduct extraordinarily beyond the bounds
of socially tolerable behavior"; and (3) such "conduct in fact
caused plaintiff severe emotional distress." House v. Hicks, 218
Or.App. 348, 357-58, 179 P.3d 730, rev. denied, 345 Or. 381, 195
P.3d 911 (2008) (citation omitted). In regard to the second
element, the conduct must be "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency,
and to be regarded as atrocious, and utterly intolerable in a
civilized community." Id. at 358 (citation and internal quotations

---

[7] Although not dispositive, plaintiff filed his spoilation
motion on May 14, 2015, but did not file his supporting
memorandum until May 22, 2105, in violation of LR 7-1(c).
Plaintiff does not dispute that he failed to satisfy the local
rules; he instead argues that his "inadvertan[ce]" should be
excused because he is proceeding pro se. Pl.'s Reply to Mot.
Sanctions 3. However, even pro se plaintiffs must "comply with
the local rules." Rivera v. Payne, 2011 WL 7983955, *1 (D.Or.
Dec. 14, 2011), adopted by 2012 WL 2012243 (D.Or. June 1, 2012).

omitted); see also Patton v. J.C. Penney Co., 301 Or. 117, 122, 719
P.2d 854 (1986), abrogated on other grounds, McGanty v.
Staudenraus, 231 Or. 532, 901 P.2d 841 (1995) (conduct that is
merely "rude, boorish, tyrannical, churlish and mean" does not
satisfy this standard). While "the inquiry is fact-specific, the
question of whether the defendant's conduct exceeded the farthest
reaches of socially tolerable behavior is, initially, a question of
law" for the court. Gordon v. Kleinfelder W., Inc., 2012 WL 844200,
*14 (D.Or. Mar. 12, 2012) (citation and internal quotations
omitted).

Without now defining the scope of sexually-based IIED claims,
the Court finds that, on the facts and evidence of this case,
Agarwal's alleged actions cannot be categorized as atrocious,
utterly intolerable, or beyond all possible bounds of decency. As
a preliminary matter, many of the allegations underlying
plaintiff's IIED claim are not supported by the record or are
contradicted by his deposition testimony and therefore cannot serve
as a basis for avoiding summary judgment. See Pl.'s Resp. to Mots.
Summ. J. 28 (articulating the facts underlying his IIED claim as
follows: "[Agarwal] ma[de] inappropriate sexual advances[,]
including attempting to rape him, conditioning his employment on
gratifying [Agarwal's] sexual desires, [and] working with Aswat to
retaliate against Plaintiff for reporting his inappropriate sexual
conduct"). For example, while plaintiff makes legal conclusions
regarding Agarwal's supervisory role at Rockwell, the
uncontradicted evidence reflects that he did not have the authority

to make hiring, firing, or promotion decisions, or to impact the
terms and conditions of plaintiff's employment. Agarwal Decl. ¶¶ 2,
11, 18, 23; Zimmerman Decl. ¶¶ 6-7; Pl.'s Resp. to Mots. Summ. J.
Ex. E, at 10, 14, 33, 38-40; see also First Harnden Decl. Ex. A, at
9, 42 (plaintiff testifying that he did "n[o]t know" whether
Agarwal had the ability to "direct APR to hire" or promote him
within Rockwell, but believed that "anyone . . . above [his] title
. . . was in a supervisor category"). In other words, Agarwal was
not the cause of plaintiff's termination and no special status
existed due to the parties' work-place relationship.

Furthermore, Agarwal's overtures were not sufficiently severe
and pervasive to either prevent plaintiff from moving in with him
or to cause plaintiff to abandon the apartment while Agarwal was
still residing there, despite the fact that plaintiff had "between
$5,000 to $20,000" in assets and immediate access to other living
arrangements. First Buchanan Decl. Ex. 1, at 25-26, 37, 78-79, 87-
88. Throughout the approximately two month period plaintiff alleges
the sporadic sexually inappropriate behavior occurred, he continued
to socialize with Agarwal - i.e. taking day trips, making or going
out to dinner, shopping for clothing and groceries, etc. - and
described these interactions as "pleasant," "enjoy[able]," and not
coerced. Id. at 82, 89-92, 102-03. Although Agarwal's advances were
unwelcome, plaintiff testified that they were largely undiscussed
and, in any event, he did not feel physically intimidated by
Agarwal. Id. at 62-63, 80-85, 88. Plaintiff also admits he never
reported Agarwal's conduct in the apartment to anyone at Rockwell,

Page 23 - OPINION AND ORDER

explaining that he was "too busy with . . . work" to try to figure out how to lodge a complaint. Id. at 20-23, 96.

Courts have generally been unwilling to impose IIED liability where, as here, unwanted and/or sexually aggressive advances transpire between two adults. See, e.g., Jones v. Clinton, 990 F.Supp. 657, 664-66, 676-77 (E.D.Ark. 1998) (granting summary judgment in favor of the defendant on an IIED claim based on alleged sexual misconduct, including that the defendant "exposed his penis (which was erect) and told [the plaintiff] to 'kiss it'"); McClinton v. Sam's East, Inc., 2012 WL 4483492, *1, *9 (W.D.La. Sept. 28, 2012) (dismissing the plaintiff's IIED claim, despite allegations of sexual harassment by his female supervisor, such as unwanted rubbing, hugging, and sexual comments) (citing Smith v. Amedisys Inc., 298 F.3d 434, 449-50 (5th Cir. 2002)); see also Harris v. Pameco Corp., 170 Or.App. 164, 171-72, 12 P.3d 524 (2000) (summarizing the case law surrounding sexually-based IIED claims in Oregon and noting that "[t]he invitation to [engage in] illicit intercourse, insufficient in itself to be actionable, becomes extreme outrage when it is prolonged and repeated to the point of hounding, and accompanied by advertising") (citation and internal quotations and brackets omitted); Hetfeld v. Bostick, 136 Or.App. 305, 310-11, 901 P.2d 986, rev. denied, 322 Or. 360, 907 P.2d 247 (1995) ("[i]t is not outrageous in the extreme to behave as people commonly behave in certain circumstances") (internal quotations omitted).

Even assuming that the underlying conduct did exceed the

bounds of socially tolerable behavior, there is no argument or evidence evincing that Agarwal had the requisite intent. See generally Pl.'s Resp. to Mots. Summ. J.; see also Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment") (citation omitted). The record demonstrates, and plaintiff admits, that Agarwal's actions were motivated by an unrequited romantic and/or sexual interest in him. First Buchanan Decl. Ex. 1, at 102-05. While plaintiff concludes that, when those sexual advances did not lead to anything, Agarwal became hostile and engaged in a campaign to adversely affect the terms and conditions of his employment, the record is wholly to the contrary. Agarwal Decl. ¶¶ 8-15, 18, 23, 26; Zimmerman Decl. ¶¶ 6-7; Pl.'s Resp. to Mots. Summ. J. Ex. E, at 10, 14, 33, 38-40; see also Meagher v. Lamb-Weston, Inc., 839 F.Supp. 1403, 1408 (D.Or. 1993) ("[l]ack of foresight, indifference to possible distress, and even gross negligence are not enough to establish a claim for IIED under Oregon law [n]or is it enough that defendant intentionally acted in a way that causes such distress") (citations omitted). Agarwal's motion is granted as to plaintiff's IIED claim.

B.   Punitive Damages

A plaintiff seeking punitive damages must prove, "by clear and convincing evidence," that the defendant acted with "malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with such a conscious

indifference to the health, safety and welfare of others." <u>Clausen v. M/V New Carissa</u>, 171 F.Supp.2d 1127, 1130 (D. Or.2001) (citation and internal quotations omitted); Or. Rev. Stat. § 31.730(1).

Plaintiff's brief is silent as to Agarwal's argument concerning the impropriety of punitive damages. <u>See generally</u> Pl.'s Resp. to Mot. Summ. J.; <u>see also</u> <u>Bojorquez v. Wells Fargo Bank, NA</u>, 2013 WL 6055258, *5 (D.Or. Nov. 7, 2013) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Nevertheless, the record before the Court is devoid of any evidence of malice, or of both an indifference to a highly unreasonable risk of harm and a conscious disregard to the health, safety, and welfare of others. Agarwal's motion is granted.

## III. <u>Rockwell's Summary Judgment Motion</u>

Rockwell moves for summary judgment under two theories. First, Rockwell asserts that plaintiff's defamation claim and "claims for race and national origin discrimination under federal and state law [are] all statutorily barred" by the failure to exhaust administrative remedies and/or the relevant statutes of limitations. Rockwell's Mot. Summ. J. 2. According to Rockwell, plaintiff's remaining claims "fail on the merits." <u>Id.</u> at 3.

### A.    <u>Unpaid Overtime</u>

To recover unpaid overtime under federal or state law, the plaintiff must prove the number of hours worked in excess of 40 hours per week for which he or she was not properly compensated.

See Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 644-45 (9th Cir. 2014) (as amended), cert. denied, 135 S.Ct. 1845 (2015) (articulating the standard for wage-based claims under the FLSA); Dusan-Speck v. St. Charles Health Sys., Inc., 2013 WL 4083617, *2 (D.Or. Aug. 9, 2013) (articulating the standard for wage-based claims under Oregon law) (citations omitted). In order to invoke the protection of the FLSA and Or. Rev. Stat. § 653.261, the plaintiff must also establish that he or she was employed by the defendant. Berger v. DIRECTV, Inc., 2015 WL 1799996, *4-5 (D.Or. Apr. 16, 2015) (citations omitted).

The Court cannot conclude on the record before it that plaintiff was employed by Rockwell. The first line of plaintiff's signed application states, in all capital letters: "I understand I am applying for employment with APR." First Harnden Decl. Ex. A, at 60. Similarly, the box at the bottom of the first page lists APR as the "prospective employer" in bold-faced print. Id. Plaintiff subsequently signed an employment contract with APR, which provided that APR would be his employer and that he would perform work at the facility of an APR "client" - i.e. Rockwell. Id. at 68-69; see also id. at 41 (plaintiff testifying that his contract with APR was the only employment agreement that existed in relation to his work at Rockwell). This agreement expressly identified plaintiff as APR's employee and therefore required APR to pay his wages. Id. at 68-69. In fact, plaintiff "expressly [waived] any entitlement to any compensation, insurance or benefits of any kind from [Rockwell]." Id. at 69. Plaintiff also completed a form authorizing

his "employer," APR, to directly deposit wages into his savings account at Bank of America. Id. at 67. Thereafter, plaintiff was issued W-2 tax forms, one in 2010 and the other in 2011, which listed APR as his employer. Id. at 65-66.

Consistent with the foregoing evidence, Zimmerman offered sworn statements that plaintiff "was an employee of APR" at "all times [when he] was performing work at Rockwell." Zimmerman Decl. ¶ 5; Pl.'s Resp. to Mots. Summ. J. Ex. H, at 8-10. In other words, plaintiff was "never hired [or] paid by Rockwell." Zimmerman Decl. ¶¶ 2-3; Pl.'s Resp. to Mots. Summ. J. Ex. H, at 17; see also Hearing (July 7, 2015) (Rockwell indicating that it only terminated plaintiff's contractor services, not his employment with APR; in fact, Rockwell did not know whether plaintiff was still providing services to APR and plaintiff did not address this point). Furthermore, Zimmerman explained that Rockwell did not maintain a personnel file for plaintiff, as it does for all of its employees. Zimmerman Decl. ¶ 4; Pl.'s Resp. to Mots. Summ. J. Ex. H, at 9-10.

These undisputed facts establish that APR, a non-party to this suit, was exclusively responsible for paying plaintiff's wages, including any allegedly outstanding overtime wages. Nevertheless, plaintiff argues that, "[s]ince Rockwell exercise[d] full control of [his] employment, he was an employee of Rockwell." Pl.'s Resp. to Mots. Summ. J. 19. In support of this argument, plaintiff relies on the Oregon statute governing independent contractors, as well as two Ninth Circuit cases wherein workers who were improperly classified as independent contractors could recover unpaid wages

under California law. Id. at 19-22 (citing Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014); Ruiz v. Affinity Logistics Corp., 754 F.3d 1093 (9th Cir.), cert. denied, 135 S.Ct. 877 (2014); Or. Rev. Stat. § 670.600).

Plaintiff misconstrues the law. Where an individual is not employed by another organization and performs work for a third-party, then the court is required to apply the "economic realities test" - of which control is one element - to determine whether that individual can be considered an "employee" of the third-party.[8]

---

[8] For the first time at oral argument, plaintiff argued that a joint employment relationship existed between Rockwell and APR. Hearing (July 7, 2015); see also Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 917-18 (9th Cir. 2003), cert. denied, 541 U.S. 1030 (2004) (outlining the FLSA's requirements for joint employment status). However, beyond so concluding, plaintiff did not discuss any of the elements of a joint employment relationship. In any event, plaintiff's unpaid overtime claims against Rockwell fail given the totality of facts and evidence before the Court. The economic realities test generally entails consideration of four factors: whether an alleged employer (1) has the power to hire and fire the alleged employee; (2) controls employee work schedules or conditions of employment; (3) determines the wage rate and method of payment; and (4) maintains employment records. Cejas Commercial Interiors, Inc. v. Torres-Lizama, 260 Or.App. 87, 106-07, 316 P.3d 389 (2013); Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1324 (9th Cir. 1991). "The determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity." Gilbreath, 931 F.2d at 1324 (citations and internal quotations omitted). Here, Rockwell controlled the conditions of plaintiff's work, including his hours and projects, and provided him with facilities and tools. Pl.'s Resp. to Mots. Summ. J. Ex. H, at 18-20, 35. Conversely, APR hired plaintiff, managed his payroll and employment records, and determined when, how, and how much he was paid. Id. at 8-10; Zimmerman Decl. ¶¶ 2-5; Harnden Decl. Ex. A, at 68-69. In addition, although this was not the first time that Rockwell had hired contractors through a staffing agency, it employed approximately 500 individuals, 200 of which were engineers or technical support; as such, Rockwell could complete projects using only its own employees. Pl.'s Resp. to Mots. Summ. J. Ex. H, at 16, 23, 37-38. Rockwell also had no association with plaintiff outside of his temporary assignment to

Berger, 2015 WL 1799996 at *5-6 (citations omitted). By contrast, plaintiff here was a contractor, as opposed to an independent contractor, meaning he was employed by APR and assigned to work at Rockwell's facility; unlike the workers in Alexander and Ruiz, APR was responsible for compensating him as an employee at all relevant times. See First Harnden Decl. Ex. A, at 69 (employment agreement stipulating that APR would be exclusively responsible for paying plaintiff's wages). Therefore, plaintiff's allegations of improper compensation needed to raised with APR, not Rockwell. See First Justice Decl. ¶ 10 (plaintiff acknowledging that APR was "processing his payroll").

Nonetheless, even assuming the existence of an employment relationship, plaintiff's unpaid overtime claims fail for a separate reason. As observed by Rockwell, both in its summary judgment brief and at oral argument, there is no indication that plaintiff actually worked any unpaid overtime. He testified that he always accurately recorded his hours on his timecard and was compensated for all such hours. First Harnden Decl. Ex. A, at 25-27; Second Harnden Decl. Ex. B, at 2-3. Because plaintiff did not furnish any documentary evidence demonstrating that he labored more

---

the company. Id. at 18, 23-25, 32, 37-38. Moreover, plaintiff's work at Rockwell was unskilled within the context of the organization; his job title was "service coordinator," his work was closely supervised, he did not possess any relevant credentials, and he was not permitted to employ assistants or otherwise direct the work of other individuals. Id. at 13; First Harnden Decl. Ex. A, at 68. Lastly, there is no indication that APR is anything other than a legitimate business, such that the Court cannot conclude that Rockwell engaged APR's services solely as a way to avoid labor laws.

than the hours for which he was pre-approved, he was asked to clarify the basis of his claims at oral argument; he responded that, by placing him on an alternating schedule, wherein he worked 44 hours one week and 36 hours every other week, Rockwell committed a per se violation of state law. First Harnden Decl. Ex. A, at 29, 33-35. Thus, because plaintiff's own statements reveal that he did not log any uncompensated overtime, it appears as though his real contention is that he wanted to work additional hours, but was never authorized to do so.[9] The failure to approve overtime is not, in and of itself, sufficient to a violation of either the FLSA or Or. Rev. Stat. § 653.261. See, e.g., State ex rel. Stevenson v. Ghawi, 39 Or.App. 827, 830-32, 593 P.2d 1266 (1979) (where a specific agreement was entered into prior to the performance of services by the employee setting forth the number of weekly working hours, and the amount paid by the employer is equal to or greater than the minimum statutory wage, the overtime requirement is met under Oregon law); Abshire v. Redland Energy Servs., LLC, 695 F.3d 792, 795 (8th Cir. 2012) ("the FLSA does not prescribe how an employer must initially establish its workweek for overtime purposes") (citations omitted). Rockwell's motion is granted as to plaintiff's federal and state unpaid overtime claims.

---

[9] Aswat instructed plaintiff on numerous occasions that he was not authorized to work overtime without prior approval. First Harnden Decl. Ex. A, at 27-29, 33; First Harnden Decl. Ex. B, at 3; First Harnden Decl. Ex. D. Indeed, plaintiff testified that he "knew [he] had to go to Mr. Aswat in order to work the overtime." First Harnden Decl. Ex. A, at 33. Further, as discussed at length herein, the record does not reflect that plaintiff's requests for overtime were denied due to any discriminatory or retaliatory animus.

B.    <u>Retaliation for Reporting Unpaid Overtime</u>

Discrimination or retaliation claims under the FLSA and Or. Rev. Stat. § 653.060 are governed by the burden-shifting framework described in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). <u>Knickerbocker v. Stoclzton</u>, 81 F.3d 907, 910 (9th Cir. 1996); <u>see also</u> <u>Snead v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090-1093 (9th Cir. 2001) (the <u>McDonnell Douglas</u> burden shifting framework applies to state law claims pursued in federal court). Pursuant to this framework, the plaintiff must first establish a prima facie case. <u>Knickerbocker</u>, 81 F.3d at 910. "Like most retaliation claims, those under FLSA require three elements: (1) statutorily protected conduct, (2) an adverse employment action, and (3) a causal link between the plaintiff's conduct and the employment action." <u>Rocksmore v. Hanson</u>, 2015 WL 852938, *8 (D.Or. Feb. 24, 2015) (citation omitted). If the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>Id.</u> If the defendant articulates such a rationale, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory or retaliatory motive. <u>Id.</u>

Plaintiff's wage-based retaliation claims fail as a matter of law. Even accepting that he was employed by Rockwell within the meaning of federal and state law, plaintiff's brief is wholly silent as to the prima facie case requirement, such that there is no argument or evidence concerning the existence of a causal link.

See generally Pl.'s Resp. to Mots. Summ. J. Regardless, although plaintiff is not precise about the dates on which he allegedly reported unpaid overtime, his termination necessarily transpired within a relatively small temporal window, as plaintiff worked at Rockwell for less than nine months total. However, the mere fact that an adverse action follows a protected activity "is not sufficient evidence of retaliation to survive a motion for summary judgment." Montgomery v. J.R. Simplot Co., 916 F.Supp. 1033, 1041 (D.Or. 1994), aff'd, 76 F.3d 387 (9th Cir. 1996). Without more, the Court cannot conclude that plaintiff met his initial burden. See Celotex, 477 U.S. at 322 (summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial").

Moreover, Rockwell has articulated several legitimate, non-discriminatory reasons for terminating plaintiff: (1) the project manager requested that he be removed from the program because the issues were complex and plaintiff did not have an engineering degree, such that there were no tasks for him to assist with anymore; (2) the only project that fit plaintiff's skill set was a cable assembly assignment and plaintiff refused that work; (3) plaintiff continued to violate working hour directives; and (4) plaintiff's performance had not always been satisfactory. First Harnden Decl. Ex. E.

Plaintiff responds that Rockwell's motives were retaliatory

Page 33 - OPINION AND ORDER

because the foregoing reasons were "written after [his] terminat[ion]" and "are utter falsehood." Pl.'s Resp. to Mots. Summ. J. 26-27. Yet plaintiff once again does not identify any evidence in support of his assertions. Id.; see also Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996), cert. denied, 522 U.S. 950 (1997) (the plaintiff "must produce enough evidence to allow a reasonable factfinder to conclude" that the alleged reason for the adverse employment action was pretextual) (citation omitted); Wallis v. J.R. Simplot Co., 26 F.3d 885, 890-91 (9th Cir. 1994) ("when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate"). In any event, the fact that Rockwell transcribed the reasons for plaintiff's termination at a later date does not, in and of itself, invalidate those reasons. Further, plaintiff's own evidence lends credence to Rockwell's proffered rationale. See generally Pl.'s Resp. to Mots. Dismiss Exs. F-H. Rockwell's motion is granted as to plaintiff's unpaid overtime retaliation claims.

C.   Sexual Harassment

Title VII "[s]exual harassment falls into two major categories: hostile work environment and quid pro quo." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). In either instance, claims under Or. Rev. Stat. § 659.030 are construed consistently with Title VII. Mains v. II Morrow, Inc., 128 Or.App. 625, 634-35, 877 P.2d 88 (1994).

i.   Hostile Work Environment

To prevail on a hostile work environment claim, the plaintiff

Page 34 - OPINION AND ORDER

must establish: (1) he was subjected to conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Vasquez v. Cnty. of L.A., 349 F.3d 634, 642 (9th Cir. 2001) (citation omitted). An employer's liability is judged on whether the employee who perpetuated the unwanted verbal or physical acts was a coworker or supervisor. Vance v. Ball State Univ., 133 S.Ct. 2434, 2440-43 (2013).

Plaintiff's hostile work environment claims fail for two reasons. First, plaintiff cannot establish the third element. The alleged actions underlying plaintiff's claims are: (1) Agarwal, Davis, and Greenley each separately sat too near to plaintiff and brushed their legs against his; (2) Kalish reached over plaintiff once to access a computer; (3) To slapped plaintiff's rear end on one occasion and rubbed his shoulders on another occasion; and (4) the two-to-four sexually-based comments made by Agarwal, not all of which occurred at the workplace.[10] First Buchanan Decl. Ex. 1, at 27-35, 63, 98. As a preliminary matter, sitting too close, reaching over, or touching shoulders are not, objectively, actions which are sexual in nature, especially in light of the fact that these purported events all took place in public spaces and no words were

_____

[10] Plaintiff's FAC and opposition do not assert liability based on the actions of Kalish, Davis, Greenley, and To. See generally FAC; Pl.'s Resp. to Mots. Summ. J. Nevertheless, in order to provide the most complete review of this case, and in light of plaintiff's pro se status, the Court considers these alleged events in evaluating defendants' motions. Furthermore, for the reasons discussed in section II(A) [Agarwal IIED], the Court does not include in its analysis plaintiff's allegations of physical contact occurring outside of workplace.

exchanged. Id.; see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 17-21 (1993) (the conduct complained of must be both objectively and subjectively hostile or abusive); Sines v. Bellingham Cold Storage Co., LLC, 2014 WL 1319789, *6 (W.D.Wash. Mar. 28, 2014) (dismissing the plaintiff's sexual harassment claim where the underlying conduct, which included "rubb[ing] [the plaintiff's] belly [and] little gay gesture things," did not inherently pertain to sex) (internal quotations omitted).

In any event, even construing plaintiff's allegations broadly and in his favor, and accepting that his subjective fear of the alleged comments and minimal contact was genuinely felt, the Court finds that the necessary pervasiveness or severity is lacking in this case. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (citation and internal quotations omitted); see also Duncan v. Gen. Motors Corp., 300 F.3d 928, 935 (9th Cir. 2002), cert. denied, 538 U.S. 994 (2003) (collecting cases where the environment was not sufficiently severe or pervasive, despite the existence of teasing, sexual jokes, inappropriate sexual comments, and repeated instances of unwanted sexual contact).

Second, the uncontravened evidence of record demonstrates that Agarwal was not plaintiff's supervisor. As discussed above, Agarwal lacked the authority to take any tangible employment action against plaintiff. Agarwal Decl. ¶¶ 2, 11, 18, 23; Zimmerman Decl. ¶¶ 6-7;

Pl.'s Resp. to Mots. Summ. J. Ex. E, at 10, 14, 33, 38-40; see also
Vance, 133 S.Ct. at 2443 (a supervisor is someone "the employer has
empowered . . . to effect a significant change in employment
status, such as hiring, firing, failing to promote, reassignment
with significantly different responsibilities, or a decision
causing a significant change in benefits") (citation and internal
quotations omitted). Notably, Agarwal was not one of the
individuals with whom plaintiff interviewed at Rockwell and he was
neither present during nor otherwise participated in plaintiff's
termination. First Buchanan Decl. Ex. 1, at 12; First Harnden Decl.
Ex. A, at 2-3, 47; First Justice Decl. ¶¶ 43-49. Moreover,
plaintiff's conduct during the time period in question belies his
testimony that he construed "anyone . . . above [his] title" as a
supervisor; he discussed all issues related to his work at
Rockwell, including whether he could receive a raise or be hired to
become "permanent with Rockwell," with Aswat. First Harnden Decl.
Ex. A, at 9, 17-20, 23-25, 27, 31, 33, 42; Second Harnden Decl. Ex.
B, at 8-9. By contrast, there is no evidence that plaintiff
approached Agarwal to lodge a complaint or seek permission for
anything.

Plaintiff's sworn statements prove that Rockwell was not
negligent with respect to the allegedly inappropriate workplace
conduct. See Vance, 133 S.Ct. at 2441 (a negligence standard
applies where the alleged sexual harassment was perpetrated by a
coworker); see also Swinton v. Potomac Corp., 270 F.3d 794, 803
(9th Cir. 2001) (under the negligence standard, an employer can be

liable for a coworker's conduct only if it knew or should have known of the harassment and failed to take adequate steps to remedy it). Plaintiff testified that, on October 20, 2010, he reported to Aswat that Agarwal and Kalish sat too close to him on two separate occasions. First Buchanan Decl. Ex. 1, at 62-63, 98. This alleged report lasted "a few seconds" and did not mention any private parts being fondled or any of the other alleged events that may have occurred outside the workplace. First Harnden Decl. Ex. A, at 18. After plaintiff purportedly lodged this complaint with Aswat, the sexual advances from Agarwal and Kalish stopped, both in and outside of the workplace. Id. at 48-49. In March 2011, plaintiff reported the additional instances of allegedly inappropriate workplace conduct. Id. at 18-19. Once again, the offensive behavior ceased immediately after being disclosed. First Harnden Decl. Ex. B, at 5. Rockwell's motion is granted as to plaintiff's hostile work environment claims.

### ii. Quid Pro Quo

To prove actionable harassment under a quid pro quo theory, the plaintiff is required to show that his employer "explicitly [or implicitly conditioned] a job, a job benefit, or the absence of a job detriment, upon [his] acceptance of sexual conduct." Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1054 (9th Cir. 2007) (citation and internal quotations omitted). Because, as discussed above, the record evinces that Agarwal lacked the authority to take any tangible employment action - i.e. he could not condition a job benefit or the absence of a job detriment upon plaintiff's

acceptance of sex - and there is no argument of evidence that Aswat acted in a sexually inappropriate manner, plaintiff's quid pro quo claim fails as a matter of law. Additionally, plaintiff did not present evidence sufficient to allow a jury to find that a reasonable man in his position would have believed that, in order to keep his job, he was required to accept Agarwal's purported sexual advances, as he continued to work at Rockwell for seven months after those advances ceased. See Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1176 (9th Cir. 2003) ("[t]he mere fact that [the plaintiff's supervisor] was interested in sex generally and desired to have sex with [the plaintiff] is simply not enough" to establish quid pro quo harassment). Rockwell's motion is granted as to this issue.

D.  Retaliation for Reporting Sexual Harassment

Retaliation claims under Title VII and its state counterpart are analyzed analogously to those asserted under the FLSA. As such, the plaintiff must first establish his prima facie case, which requires a showing of: (1) statutorily protected conduct; (2) an adverse employment action; and (3) a causal link between the plaintiff's conduct and the employment action. See Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1188 (9th Cir. 2005) (outlining the requirements of a Title VII retaliation claim); Shaw v. R.U. One Corp., 822 F.Supp.2d 1094, 1101 (D.Or. 2011) (outlining the requirements of a retaliation claim pursuant to Or. Rev. Stat. § 659A.030).

Initially, as addressed above, plaintiff's two brief reports

to Aswat relating to alleged harassment did not specifically mention any conduct that was inherently sexual or discriminatory. As such, it is questionable whether plaintiff engaged in a statutorily protected activity.

Regardless, plaintiff's sexually-based retaliation claims fail for the same reasons as his wage-based retaliation claims. Namely, plaintiff's brief is silent regarding his prima facie case. See generally Pl.'s Resp. to Mots. Summ. J. Similarly, outside of his conclusory assertion that Aswat's reasons for terminating him were false, plaintiff did not proffer any argument or evidence of pretext. Id. Therefore, even assuming that the proximity in time between plaintiff's reports, especially the second report which transpired in March 2011, and his May 2011 termination is sufficient to establish causation, his retaliation claims must still be dismissed. See Williams v. Fed. Express Corp., 211 F.Supp.2d 1257, 1266 (D.Or. 2002) ("a plaintiff may not rely on the proximity in time between the protected activity and the adverse employment action to create a triable issue of fact after the employer has offered legitimate reasons for its actions") (citation and internal quotations omitted). Rockwell's motion is granted as to plaintiff's retaliation claims under Title VII and Or. Rev. Stat. § 659A.030.

    E.   Racial/National Origin Discrimination

In the context of Title VII, exhaustion of administrative remedies is a prerequisite to "seeking judicial relief from discriminatory action." Brown v. Puget Sound Elec. Apprenticeship

& Training Trust, 732 F.2d 726, 729 (9th Cir. 1984) (citation omitted). Accordingly, a "Title VII plaintiff must file a charge with the EEOC within 180 days or with a state or local agency within 300 days after the allegedly discriminatory act before seeking federal adjudication of his claim." Clink v. Or. Health & Sci. Univ., 9 F.Supp.3d 1162, 1164 (D.Or. 2014) (citations omitted). Unlike under Title VII, a plaintiff alleging a claim under Or. Rev. Stat. § 659A.030 is not required to file an administrative complaint. Or. Rev. Stat. §§ 659A.820, 659A.875. Nevertheless, a civil action premised on this statute must "be commenced within one year after the occurrence of the unlawful employment practice unless a complaint has been timely filed [with BOLI]." Or. Rev. Stat. § 659A.875(1).

Here, plaintiff's failure to exhaust his administrative remedies is fatal to his federal and state race/national origin discrimination claims, especially given that his brief is wholly silent as to this issue. See generally Pl.'s Resp. to Mots. Summ. J. Critically, neither a claim for discrimination nor facts indicating the existence of workplace bias related to race or national origin were raised in plaintiff's EEOC complaint through BOLI; instead, plaintiff first alleged such a claim (although without any underlying facts) in his original complaint, which was filed on August 20, 2012, more than one year after his termination. First Harnden Decl. Ex. B; Compl. ¶ 45; see also United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("[a] discriminatory act which is not made the basis for a timely charge is . . . merely an

unfortunate event in history which has no present legal consequences"). In other words, plaintiff's allegations concerning race/national origin discrimination are discrete from his other allegations of wrongdoing and therefore not actionable because the relevant statutes of limitations have expired. Rockwell's motion is granted as to plaintiff's race/national origin claims.

    F.   <u>Contractual Discrimination</u>

    To be entitled to relief under 42 U.S.C. § 1981, the plaintiff must establish, amongst other elements, that an underlying contract existed with the defendant. <u>Dofnino's Pizza, Inc. v. McDonald</u>, 546 U.S. 470, 479-80 (2006) (citation and internal quotations omitted).

    Once again, plaintiff's brief is silent to 42 U.S.C. § 1981 and its requirements. <u>See generally</u> Pl.'s Resp. to Mots. Summ. J. Irrespective of plaintiff's employment status with Rockwell, it is undisputed that the only entity he entered into a contract with was APR, a non-party to this suit. <u>See</u> First Harnden Decl. Ex. A, at 41, 68-69. Further, beyond concluding that his "employment with [Rockwell] gave rise to a contractual relationship," plaintiff neither alleges any facts that would support the existence of an agreement nor specifies any contractual right that was impaired by Rockwell's purported racial animus.[11] FAC ¶ 133-41; <u>see also Jackson</u>

_____

    [11] While not dispositive, the Court observes that plaintiff's racially-based claims are based exclusively on a single conversion, during which Aswat allegedly told plaintiff that Rockwell was a "'white organization' [such that] it would be very difficult for [him] to obtain a raise or for his position to be made permanent." FAC ¶ 37; First Harnden Decl. Ex. A, at 20-21, 42. Outside of the fact that he does not have any evidence of discrimination, Aswat and Agarwal, both of whom hold high-level, permanent positions at Rockwell, are of the same race/national

v. California, 2014 WL 3778263, *11 (E.D.Cal. July 30, 2014),
adopted by 2014 WL 4192802 (E.D.Cal. Aug. 20, 2014) (dismissing the
plaintiffs' 42 U.S.C. § 1981 claim where they were "clearly not
parties to any contract [with the defendant] based on the
allegations in the second amended complaint"). Rockwell's motion is
granted as to this claim.

    G.    <u>Whistleblower Retaliation</u>

    Regardless of whether a whisteblower retaliation claim is
formed around Or. Rev. Stat. § 654.062 or Or. Rev. Stat. §
659A.199, the statute of limitations for bringing a civil action is
one year, unless an administrative charge has been filed. Or. Rev.
Stat. §§ 654.062(6)(c), 659A.875(1). Plaintiff did not assert any
allegations relating to air quality issues, which were purportedly
raised on or around February 15, 2011, in his BOLI or original
complaint. <u>See generally</u> First Harnden Decl. Ex. B; Compl. The FAC
- filed more than a year-and-a-half after plaintiff was terminated
- is the first mention of any safety-based complaint. FAC ¶ 35.
Accordingly, even presuming that plaintiff's February 2011 report
falls within the purview of Or. Rev. Stat. § 654.062 or Or. Rev.

---

origin as plaintiff. First Harnden Decl. Ex. A, at 21. Thus, to
the extent plaintiff attempts to raise a disparate treatment
claim for the first time in his opposition, his argument fails.
<u>See</u> Pl.'s Resp. to Mots. Summ. J. 26 ("Rockwell maintained
employment practices and policies that had a disparate impact on
non-white, and specifically Indian employees"); <u>see also</u> <u>Navajo</u>
<u>Nation v. U.S. Forest Serv.</u>, 535 F.3d 1058, 1080 (9th Cir. 2008),
<u>cert. denied</u>, 556 U.S. 1281 (2009) ("[where] the complaint does
not include the necessary factual allegations to state a claim,
raising such claim in a summary judgment motion is insufficient
to present the claim to the district court").

Stat. § 659A.199,[12] his whistleblower retaliation claim is nonetheless time-barred. Rockwell's motion is granted as to plaintiff's whistleblower retaliation claim.

H.    Intentional Infliction of Emotional Distress

As summarized in section II(A), the plaintiff bears the burden of proving the existence of an extraordinary transgression of the bounds of socially tolerable conduct, as well as an intent to inflict severe emotional distress. Further, an employer can be liable for an employee's torts only "when the employee acts within the scope of employment." Ballinger v. Klamath Pac. Corp., 135 Or.App. 438, 456, 898 P.2d 232 (1995) (citation and internal quotations omitted). Three requirements must be met for employer liability to attach under a respondeat superior theory: (1) the act must have "occurred substantially within the time and space limits authorized by the employment"; (2) the employee "was motivated, at least partially, by a purpose to serve" the employer; and (3) "the act is of a kind which [the employee] was hired to perform." Id. (citation and internal quotations omitted).

Plaintiff here can neither establish the requisite elements of his IIED claim nor a basis for imposing respondeat superior liability. Regarding the latter, it is well-settled that "workplace

───────────────

[12] Plaintiff testified he could not recall what he complained about in relation to the air quality at Rockwell. First Harnden Decl. Ex. A, at 22-25. As such, plaintiff "failed to offer evidence of [his] good faith belief that [working conditions at Rockwell were] in violation of applicable law." Javansalehi v. BF & Assocs., Inc., 2011 WL 5239752, *9 (D.Or. Nov. 1, 2011), rev'd in part on recons. on other grounds, 2012 WL 1566184 (D.Or. May 2, 2012).

Page 44 - OPINION AND ORDER

sexual harassment that results in IIED and battery is motivated by purely personal desires that are unrelated to serving one's employer." Id. (citation omitted). Thus, accepting for the sake of argument that Agarwal, Kalish, Greenley, To, and Davis engaged in inherently sexual workplace behavior, plaintiff is unable to demonstrate that they were acting within the scope of their employment, as their "behavior was neither related to a job responsibility nor conduct that [Rockwell] even tacitly condoned." Id.

Moreover, as discussed at length herein, the conduct alleged by plaintiff is not sufficiently extreme and outrageous, and there is no evidence that Rockwell intended to inflict emotional distress. See Pl.'s Resp. to Mots. Summ. J. 27-28 (the entirety of plaintiff's IIED allegations against Rockwell are as follows: Aswat "scream[ed] [and] accus[ed] Plaintiff of sabotaging engineering projects in front of Plaintiff's coworkers, retaliat[ed] against plaintiff for opposing [Rockwell's] failure to comply with overtime laws [and] for reporting the inappropriate sexual conduct of other employees"). Indeed, Oregon courts "have been very hesitant to impose liability for IIED claims in employment settings, even in the face of serious employer misconduct." Robinson v. U.S. Bancorp, 2000 WL 435468, *8 (D.Or. Mar. 17, 2000), adopted by 2000 WL 33141063 (D.Or. Apr. 20, 2000) (collecting cases). "The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of

socially tolerable conduct under Oregon law." Id. (citations omitted); see also Madani v. Kendall Ford, Inc., 312 Or. 198, 204, 818 P.2d 930 (1991), abrogated on other grounds by McGanty, 231 Or. 532 ("[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior").

As a result, courts have routinely dismissed sexually-based IIED claims, even those involving blatantly improper workplace conduct. See Lewis v. Or. Beauty Supply Co., 302 Or. 616, 618-28, 733 P.2d 430 (1987) (owner's failure to respond to the plaintiff's complaints of sexual harassment by her son did "not rise to the level of the cold-blooded oppressive browbeating . . . nor were the acts here as socially intolerable as those of the other cited cases"); Sexsmith v. Marriott Int'l Inc., 896 F.Supp. 1040, 1041-43 (D.Or. 1995) (dismissing the plaintiff's IIED claim where he alleged that a supervisor ignored his complaints of sexual harassment, made unwelcome comments about another employee's sex life, and stopped scheduling the plaintiff in retaliation for resistance to the alleged sexual harassment); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 239, 828 P.2d 479, rev. denied, 314 Or. 176, 836 P.2d 1345 (1992) (conduct of employer did not exceed the bounds of social toleration, even where he accused the plaintiffs of being liars and saboteurs, made them hold hands, angrily terminated their employment, and rashly ordered them off premises, even threatening to "bodily [throw them] out, pregnant or not"). Rockwell's motion is granted as to this matter.

I.    Defamation

The statute of limitations for a defamation claim is one year and "begins to run on the date of the publication of the false or defamatory statement." Or. Rev. Stat. § 12.120(2); Allen v. N.W. Permanente, P.C., 2013 WL 865967, *4 (D.Or. Jan. 2, 2013), adopted as modified, 2013 WL 865973 (D.Or. Mar. 7, 2013) (citation omitted). The allegedly false statement[13] in the case at bar was made on or before May 20, 2011, as plaintiff has not spoken to any Rockwell employee (save a request to Zimmerman to preserve documents and provide a copy of his personnel file) since his termination. First Harnden Decl. Ex. A, at 40. Plaintiff commenced this lawsuit on August 20, 2012, more than one year after his claim accrued. Rockwell's motion is granted as to plaintiff's defamation claim.

IV.    Supplemental Jurisdiction

Dismissal of plaintiff's federal claims does not automatically deprive this Court of subject matter jurisdiction. Carlsbad Tech., Inc. v. HIF Bio. Inc., 556 U.S. 635, 639 (2009). Rather, where a

---

[13] Plaintiff raised only one remark that may qualify as either potentially defamatory or published: on May 20, 2011, Aswat purportedly accused him "of sabotaging projects that the engineering group was working on" and "screamed loud enough for all of the employees on the floor to hear." FAC ¶ 48, 159-63; see also First Buchanan Decl. Ex. 1, at 93-94 (plaintiff first testifying that Agarwal made comments about his education that put him in "a false light" but later admitting that Agarwal's comments were, in fact, "dead on accurate" because he was "not a student at PSU any time that [he] worked at Rockwell"). However, during his deposition, plaintiff did not recall anything that would qualify as defamatory being said and, although he was "sure there were people that walked by" Aswat's office, he did not have any specific recollection of who could have overheard that conversation. First Harnden Decl. Ex. A, at 32-36.

Page 47 - OPINION AND ORDER

district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 940 (9th Cir. 2012). In this case, the values of federalism and comity weigh in favor of this Court declining to exercise supplemental jurisdiction. Common law claims for assault and battery touch upon classic state issues, and the state court is a convenient forum for both parties in resolving the remainder of this dispute.

**CONCLUSION**

Defendants' motions for summary judgement (docs. 85, 89) are GRANTED. Plaintiff's motion to impose sanctions (doc. 131) is DENIED. With the exception of those for assault and battery asserted against Agarwal under state law, plaintiff's claims are DISMISSED with prejudice. Because the Court declines to exercise supplemental jurisdiction, plaintiff's remaining pendent claims are DISMISSED without prejudice, such that they may be refiled in state court.

IT IS SO ORDERED.

Dated this $22$ of July 2015.

_____
Ann Aiken
United States District Judge